UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY JARRETT,

    Petitioner,

v.                                                              Case No. 8:23-cv-331-JLB-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Anthony Jarrett, a Florida state prisoner, timely filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). Having considered the petition, the response in opposition (Doc. 8), and the entire record before the Court, the petition is denied.

## I.    Background and Procedural History

A Florida state court jury convicted Petitioner of burglary of an unoccupied structure (count one) and petit theft (count two). (Doc. 6-2 at 370). After categorizing Petitioner as both a violent career criminal and a habitual felony offender, the trial judge sentenced Petitioner to eleven years' imprisonment as to count one and time served as to count two. (Doc. 6-2 at 444–45). While Petitioner's direct appeal was pending, the trial judge granted Jarrett's motion to correct his sentence under Florida Rule of

1

Criminal Procedure 3.800(b), struck the habitual felony offender designation, and resentenced Jarrett only as a violent career criminal to ten years' imprisonment on count one. (Doc. 6-2 at 524–27, 533). The state appellate court affirmed the convictions and sentences. (Doc. 6-2 at 607).

The postconviction court denied Petitioner's motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a) and motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Doc. 6-2 at 620–23, 732–35), and Petitioner did not appeal the postconviction court's denials.

## II.   Facts[1]

On August 27, 2018, the owner of a car dealership in Tampa, Florida, observed a 2013 Ford F-250 truck parked and propped up on blocks without any wheels in front of the dealership. (Doc. 6-2 at 234, 247) The owner also observed that a portion of the fence enclosing the business's curtilage was missing. (Doc. 6-2 at 235).

A subsequent review of the surveillance camera showed two males entering the property and using a jack to lift the Ford truck. (Doc. 6-2 at 245–47). The two males removed the wheels from the Ford truck, removed part of the fence that enclosed the business, and rolled the wheels to a road

---

[1] This factual summary is extracted from the trial transcript.

next to the business. (Doc. 6-2 at 245–47). To replace the stolen wheels, the owner purchased stock wheels for $1,600.00. (Doc. 6-2 at 248–49).

With images of the males taken from the surveillance video recording, a detective created a flyer that he distributed to sheriff's deputies. (Doc. 6-2 at 260–61). About two weeks later, the detective interviewed Petitioner. (Doc. 6-2 at 261–62, 273). At trial, the prosecutor played an audio recording of that interview. (Doc. 6-2 at 267–71). After verbally waiving his constitutional rights, Petitioner viewed the video recording, identified himself and another male named "Charlie" in that video, and admitted that he removed the wheels from the Ford truck and sold them at a gas station for $300.00. (Doc. 6-2 at 262–64, 268–71).

Before trial, Petitioner moved to suppress his statements to the detective related to the crimes charged in this case. (Doc. 6-2 at 16–24). In the motion, Petitioner alleged that, on September 4, 2018, a police officer arrested him in Case Number 18-CF-12949 for what defense counsel believed were related crimes, and the next day, a trial judge appointed counsel in Case Number 18-CF-12949. (Doc. 6-2 at 19). He alleged that he signed a form titled "Notice of Defendant's Invocation of Constitutional Rights" in Case Number 18-CF-12949 (Doc. 6-2 at 19, 25). He argued that, by signing the form, he invoked his right to counsel under both the Fifth Amendment and the Sixth Amendment. (Doc. 6-2 at 19, 25). The form stated the following to

3

invoke Petitioner's right to counsel, "I intend this to be an absolute expression of my desire for the assistance of an attorney in dealing with my custodial interrogation by the police about this arrest or any other crime or criminal activity under investigation." (Doc. 6-2 at 19).

Petitioner alleged that, on September 11, 2018, two detectives interrogated him at the jail without first notifying his attorney appointed to represent him in the other case where he invoked his Fifth and Sixth Amendment rights. (Doc. 6-2 at 20). He noted that during the interrogation, he made incriminating admissions about the burglary and petit theft crimes in this case. (Doc. 6-2 at 17, 20). The day after he confessed to the crimes subject to this petition, on September 12, 2018, Petitioner signed a notice of invocation of constitutional rights form for the crimes involving the stolen wheels. (Doc. 6-2 at 25).

At a hearing on the motion to suppress his statements, the parties stipulated to the facts alleged in the motion to suppress. (Doc. 6-2 at 31–32, 38–39, 43–45, 52–54, 56–57, 60–61). Also, the parties stipulated that, before the interrogation, the detective advised Petitioner of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Petitioner verbally waived those rights. (Doc. 6-2 at 45, 52, 56–57).

Petitioner's trial counsel argued that, because the crimes charged in this case are inextricably intertwined with the crimes charged in Case

4

Number 18-CF-12949, Petitioner also invoked his right to counsel in this case by signing the invocation of constitutional rights form in Case Number 18-CF-12949. (Doc. 6-2 at 32, 57). The prosecutor argued that the crimes charged in this case were not inextricably intertwined with those charged in Case Number 18-CF-12949, as they occurred on different dates, in different locations, and involved different victims. (Doc. 6-2 at 32, 57–60).

The trial judge denied the motion to suppress Petitoner's statements to the detective related to the crimes charged in this case. (Doc. 6-2 at 67, 83–87). The trial judge determined that the charges in this case were not related to the charges in Case Number 18-CF-12949. (Doc. 6-2 at 85–86). Consequently, the trial judge concluded that Petitioner cannot anticipatorily invoke his right to counsel in this case by signing the invocation of constitutional rights form in another case—case Number 18-CF-12949. (Doc. 6-2 at 85–86).

### III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 governs this proceeding. *Carroll v. Sec'y, Dep't Corrs.*, 574 F.3d 1354, 1364 (11th Cir. 2009). A federal court grants a state habeas petitioner relief if the state habeas petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under section 2254(d), a

federal court cannot grant relief on a claim adjudicated on the merits in a state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of section 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses only the holding of an opinion by the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. To obtain relief under AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) ("In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'") (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)).

## IV.  Discussion

### A.  Ground One

Petitioner asserts that the trial judge violated his federal constitutional rights by denying his motion to suppress his confession. (Doc. 1 at 6).

Respondent asserts that the claim is procedurally barred, arguing that Petitoiner failed to preserve the issue for review in his direct appeal to Florida's appellate court. (Doc. 8 at 6–7). The Court disagrees. In his motion

to suppress, Petitioner cited the Fifth Amendment, the Sixth Amendment, *Miranda v. Arizona*, 384 U.S. 436 (1966), and *McNeil v. Wisconsin*, 501 U.S. 171 (1991), arguing that the detective violated his federal constitutional rights by interrogating him. (Doc. 6-2 at 16–24). Petitioner timely filed the motion to suppress and fairly apprised the trial judge of the legal and factual grounds of his claim. Consequently, Petitioner preserved the issue for review on direct appeal. Fla. Stat. § 924.051(1)(b).[2]

The trial judge denied Petitioner's motion to suppress as follows:

> This matter is before the Court on Defendant's "Motion[s] to Suppress: Evidence and Statements Taken in Violation of Due Process (Interrogation After Signing Invocation of Rights Form),"[1] filed February 6, 2019, pursuant to Florida Rule of Criminal Procedure 3.190. On February 13, 2019, the Court held a hearing concerning the instant matter. After reviewing Defendant's motions, the testimony and argument presented at the February 13, 2019, motion hearing, the court file, and the record, the Court finds as follows:
>
> > [1] The Court notes that Defendant filed an individual motion as to each above-styled case number. All motions appear to be substantially similar, except individualized factual bases, and make substantially the same argument.
>
> In his motions, Defendant first seeks the suppression of "any and all statements and purported admissions made by Mr. Jarrett to any law enforcement agent or

---

[2] An earlier order determined that Petitioner exhausted his remedies in state court. (Doc. 7 at 4).

8

agent of the State of Florida . . . on September 11, 2018, at approximately 0930 hours, as well as any evidence obtained from said statements and admissions." In support of his argument, Defendant alleges that he became a suspect in Case Number 18-CF-012949 and was subsequently arrested on September 4, 2018. On September 5, 2018, Defendant made his first appearance in that case at Preliminarily Presentation Court, at which time the Public Defender was appointed to represent him. Defendant also claims that, "with the assistance of his attorney, the Defendant executed a form entitled Notice of Defendant's Invocation of Constitutional Rights," which stated within that Defendant invokes his right to counsel for the purposes of "any custodial interrogation by the police about this arrest or any other crime or criminal activity under investigation." Defendant claims that a copy of this notice was provided to the Clerk of Court, the Office of the State Attorney, and to the Hillsborough County Sheriff's Office (HCSO). Defendant then claims that, on September 11, 2018, detectives from HCSO met with Defendant at the county jail and conducted an interrogation, without the benefit of counsel being present.

Defendant ultimately argues that, by being represented by counsel and executing the "Notice of Defendant's Invocation of Constitutional Rights," Defendant had unequivocally invoked his right to be represented by counsel at any police initiated custodial interview, and that any waiver of his right to counsel Defendant made to law enforcement, subsequent to that invocation, was ineffective. Defendant concludes that, because he had been appointed counsel to represent him, and because he executed a form invoking his right to counsel, any statements made to law enforcement "were elicited in violation of the Sixth Amendment to the United States Constitution and Article I, paragraph 16 of the Florida Constitution and should therefore be suppressed."

At the February 13, 2019, hearing, the State stipulated that any statements made by Defendant, related to case 18-CF-012949, as a result of questioning conducted by law enforcement on September 11, 2018, subsequent to Defendant's invocation of rights, would be inadmissible. The State stipulated that, due to Defendant being represented by counsel in case 18-CF-012949, as of September 5, 2018, and due to Defendant's signing his invocation of rights form, law enforcement impermissibly interrogated Defendant without benefit of his appointed counsel. As such, the State stipulated that any statements made by Defendant on September 11, 2018, related to case 18-CF-012949 should be suppressed.

However, the State argued that any statements related to cases 18-CF-013536 and 18-CF-013550 made by Defendant as a result of the same interrogation are not suppressible. The State contends that, in those cases, Defendant was not charged until after the September 11, 2018, interview, was not appointed counsel, and did not sign the same invocation of rights form until September 12, 2018. Additionally, the State argues that at the September 11, 2018, interview, Defendant was informed of his *Miranda* rights and he waived his right to have counsel present.[2] As such, the State argues that these statements need not be suppressed. The Court agrees with the State's position.

> [2] The Court notes that the parties stipulated at the February 13, 2019, hearing that law enforcement officers informed Defendant of his *Miranda* rights prior to the September 11, 2018, interview, and Defendant actually waived his right to have counsel present. Defense counsel argued that, while Defendant did waive his rights, his waiver was not

10

>knowing or voluntary because counsel had already been appointed in case 18-CF-012949.

The Court first finds that Defendant cannot "invoke his *Miranda* rights anticipatorily, in a context other than custodial interrogation." *See Sapp v. State*, 690 So. 2d 581, 584 (Fla. 1997); *Thomas v. State*, 748 So. 2d 970, 981–82 (Fla. 1999). The Court finds that the parties correctly stipulated at the February 13, 2019, hearing that, in case 18-CF-012949, Defendant was appointed counsel and signed his invocation of rights form prior to the September 11, 2018, interrogation, and thus any statements made in regard to that case, without benefit of counsel present, are inadmissible and properly suppressed. However, the Court finds that in cases 18-CF-013536 and 18-CF-013550, he had not yet been appointed counsel and did not sign his invocation of rights form until September 12, 2018, a day after the interrogation at issue took place. As such, the Court finds that any statements Defendant made concerning other unrelated cases in which Defendant had not yet been appointed counsel and where he signed no such form need not be suppressed. *See Ault v. State*, 866 So. 2d 674, 682–83 (Fla. 2003) (holding that a defendant's invocation of his right to counsel at a magistrate hearing on one charge only precluded law enforcement from questioning him about that charge without benefit of counsel present, but did not preclude questioning concerning unrelated offenses, and therefore, defendant's confession to police regarding those other offenses was admissible).

Consequently, under these facts, Defendant's "Notice of Defendant's Invocation of Constitutional Rights" form related to case 18-CF-012949 was insufficient under both federal and Florida law to anticipatorily invoke his right to the presence of counsel during his interview with law enforcement regarding cases 18-CF-013536 and 18-CF-013550. Therefore, any

11

> statements regarding cases 18-CF-013536 and 18-CF-013550 need not be suppressed.

(Doc. 6-2 at 83–87) (state court record citations omitted)

In his federal petition, Petitioner challenges his burglary and petit theft convictions in Case Number 18-CF-13550. (Doc. 1 at 1). At the suppression hearing, trial counsel contended that the crimes charged in Case Number 18-CF-13550 were inextricably intertwined with the crimes charged in Case Number 18-CF-12949. (Doc. 6-2 at 58–62). Trial counsel argued that, consequently, the notice of invocation of rights in Case Number 18-CF-12949 required suppression of the statements about the crimes charged in Case Number 18-CF-13550. (Doc. 6-2 at 58–62).

"[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). "Interrogation by the State is such a stage." 556 U.S. at 786. "The Sixth Amendment right, however, is offense specific." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment,

12

information, or arraignment.'" 501 U.S. at 175 (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)).

"Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses, [the United States Supreme Court] [has] recognized in other contexts that the definition of an 'offense' is not necessarily limited to the four corners of a charging instrument." *Texas v. Cobb*, 532 U.S. 162, 172–73 (2001). "[W]hen the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." 532 U.S. at 173 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). *See Philmore v. McNeil*, 575 F.3d 1251, 1258 (11th Cir. 2009) (applying *Cobb* to conclude that a defendant did not invoke his Sixth Amendment right to counsel for a murder charge, even though he invoked his right for related robbery and trespass charges, because murder is a different offense than robbery and trespass under *Blockburger*); *Gore v. Sec'y, Dep't Corrs.*, 492 F.3d 1273, 1306 n.73 (11th Cir. 2007) (applying *Cobb* to conclude that a defendant did not invoke his Sixth Amendment right to counsel for murder, kidnapping, and robbery charges, even though he invoked his right for related federal kidnapping and violation of supervised release charges, because the charges were "sufficiently distinct" under *Blockburger*).

Under *Blockburger*, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Cobb*, 532 U.S. at 173 (quoting *Blockburger*, 284 U.S. at 304). "[I]f 'each *statute* requires proof of an additional fact which the other does not,' the offenses are not the same under the *Blockburger* test." *Illinois v. Vitale*, 447 U.S. 410, 416 (1980) (italics in original and citations omitted).

If two charges under the same statute are "different in both time and place" and "absolutely no common conduct link[s] the alleged offenses," the offenses are not part of the same transaction or occurrence under *Blockburger*. *United States v. Felix*, 503 U.S. 378, 385 (1992). "[A judge] look[s] at whether the crimes were different in place and time, whether there was common conduct linking the alleged offenses, whether the individuals involved in each offense were different, and whether the evidence used to prove the offenses differed." *United States v. Soto*, 799 F.3d 68, 86 (1st Cir. 2015) (citing *Felix*, 503 U.S. at 385).

In *Felix*, a jury in the Western District of Missouri found the defendant guilty of drug offenses for purchasing and receiving precursor chemicals and equipment in Missouri for the manufacture of methamphetamine during August of 1987. *Felix*, 503 U.S. at 380. A jury in the Eastern District of

14

Oklahoma subsequently found the defendant guilty of drug offenses for operating a facility in Oklahoma that manufactured methamphetamine during the summer of 1987. *Felix*, 503 U.S. at 380.

During the trial in Missouri, the prosecutor introduced under Federal Rule of Evidence 404(b) evidence that the defendant manufactured methamphetamine in Oklahoma during the summer of 1987. *Felix*, 503 U.S. at 381. The defendant asserted that the Double Jeopardy clause barred the subsequent prosecution for the manufacture of methamphetamine in Oklahoma during the summary of 1987. *Id.* at 384–85.

After closely examining the indictments in both cases, the United States Supreme Court determined that the crimes charged in Missouri and the crimes charged in Oklahoma were not the "same offence" under the Double Jeopardy clause because the crimes were "different in both time and place." *Felix*, 503 U.S. at 385.

Here, the state information charged Petitioner with burglary of an unoccupied structure and grand theft[3] that occurred on August 26, 2018, at Next Ride Auto Dealership. (Doc. 6-2 at 9–10). A prior state information in Case Number 18-CF-12949 charged Petitioner with burglary of an

---

[3] After the state rested its case, the trial judge granted Petitioner's motion for judgment of acquittal and reduced the grand theft charge to petit theft. (Doc. 6-2 at 307–08).

unoccupied structure (count one) and criminal mischief (count four) that occurred on June 27, 2018, at Billionaire Smoke Shop, and with burglary of an unoccupied structure (count two), criminal mischief (count three), and grand theft (count five) that occurred on the same day at Nauto Car Lot. (Doc. 13-2 at 2–4).

Even though both charging documents contain charges for burglary of an unoccupied structure and grand theft, the crimes charged in this case occurred almost two months after the crimes charged in Case Number 18-CF-12949 *and* at different locations. Because the crimes charged in this case are not part of the same act or transaction as the crimes charged in Case Number 18-CF-12949, the offenses are not the "same offence" under the Double Jeopardy clause of the Fifth Amendment. *United States v. Bobb*, 577 F.3d 1366, 1375 (11th Cir. 2009) (holding that two convictions with the same elements did not violate double jeopardy because the offenses occurred on different dates and arose from different conduct). *Felix*, 503 U.S. at 385 ("The actual crimes charged in each case were different in both time and place; there was absolutely no common conduct linking the alleged offenses. In short, none of the offenses for which Felix was prosecuted in the Oklahoma indictment is in any sense the 'same offence' [under the Double Jeopardy clause] as the offense for which he was prosecuted in Missouri.").

Because the offenses are not the same under the *Blockburger* test, Petitioner's invocation of his right to counsel in his prior case, Case Number 18-CF-12949, did not prohibit the detective from interrogating him about the crimes charged in Case Number 18-CF-13550. Because Petitioner cannot anticipatorily assert the Sixth Amendment right to counsel for a future, unrelated prosecution, the trial judge did not unreasonably deny the motion to suppress statements about the burglary and theft crimes in Case Number 18-CF-13550. *McNeil*, 501 U.S. at 175.[4]

Alternatively, even if the crimes charged in both cases are the same/related offenses, "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo*, 556 U.S. at 786. "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* at 786. "And when a defendant is

---

[4] Respondent argues that, because the information filed in Case Number 18-CF-12949 was not part of the record before the state court subject to this petition, this Court cannot consider that information. (Doc. 13 at 1–2) *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). However, even if the information filed in Case Number 18-CF-12949 is not part of the state court record, the Court may consider the information under a *de novo* review of the claim. Because Petitioner is not entitled to relief under the less deferential *de novo* standard of review, the state court did not unreasonably deny the motion to suppress under section 2254(d). *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) ("The state court's decision rejecting Thompkins' *Miranda* claim was thus correct under *de novo* review and therefore necessarily reasonable under the more deferential AEDPA standard of review, 28 U.S.C. § 2254(d).").

17

read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the Fifth Amendment." 556 U.S. at 786 (citing *Patterson v. Illinois*, 487 U.S. 285, 296 (1988)).

Here, at the suppression hearing, the parties stipulated that, before the interrogation, the detective advised Petitioner of his *Miranda* rights, and he waived those rights. (Doc. 6-2 at 56–57, 85). During the interrogation, the detective advised Petitioner that he was entitled to representation by an attorney before and during questioning without any charge. (Doc. 6-2 at 267). The detective asked Petitioner if he was "willing to answer questions or make a statement without an attorney being present," and Petitioner responded, "I'm cool with that." (Doc. 6-2 at 267) The detective asked Petitioner whether "anyone threatened [him], coerced [him] or promised [him] anything to cause [him] to answer questions or make a statement," and Petitioner replied, "No." (Doc. 6-2 at 267–68). Petitioner failed to present any convincing evidence that his waiver of *Miranda* rights was unknowing or involuntary. Because the record demonstrates that Petitioner knowingly, voluntarily, and intelligently waived his Sixth Amendment right to counsel, the trial judge did not violate clearly established federal law by denying his

18

motion to suppress. *Montejo*, 556 U.S. at 786. Consequently, Petitioner is not entitled to relief on Ground One on that basis as well.

Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Petitioner and to **CLOSE** this case.

## V.     Certificate of Appealability

Before a habeas petitioner may appeal an order denying a petition, either a district judge or a court of appeals judge must issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Because Petitioner fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would find debatable both the merits of the underlying claim and the procedural issues he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**ORDERED** in Tampa, Florida on November 25, 2025.

                                                                                    _____
                                                                                    JOHN L. BADALAMENTI
                                                                                    UNITED STATES DISTRICT JUDGE